## In re BURK.

### Patent Appeal No. 3427.

**Court of Customs and Patent Appeals.**

**Jan. 28, 1935.**

See, also (Cust. & Pat. App.) 73 F.(2d) 497.

Fay; Oberlin & Fay, of Washington, D. C. (Almon S. Nelson, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant filed an application in the United States Patent Office for a patent on an improvement in a process for inhibiting gum-formation in cracked petroleum motor-fuel distillates and the product thereof. Two claims were allowed and seven, Nos. 1, 2, 3, 7, 8, 9, and 17, rejected by the examiner, and, on appeal, the decision was affirmed by the Board of Appeals. Claims 1, 2, 3, and 8 are thought to be typical of the rejected claims, and are here quoted:

"1. A process of inhibiting gum-formation in cracked petroleum motor-fuel distillates, which comprises subjecting the

cracked distillate to the action of a normally liquid amine soluble in the distillate, and one of the following: a normally liquid aliphatic mercaptan, a phenol soluble in the distillate, in total amount not substantially in excess of 1 per cent.

"2. A process of inhibiting gum-formation in cracked petroleum motor-fuel distillates, which comprises subjecting the cracked distillate to the action of a normally liquid amine soluble in the distillate, and a normally liquid aliphatic mercaptan containing not less than 5 carbon atoms, in total amount not substantially in excess of 1 per cent."

"8. A cracked petroleum motor fuel distillate containing the reaction products of ingredients thereof and a normally liquid amine soluble in the distillate, and a normally liquid aliphatic mercaptan containing not less than 5 carbon atoms, in total amount not substantially in excess of 1 per cent."

"3. A process of inhibiting gum-formation in cracked petroleum motor-fuel distillates, which comprises subjecting the cracked distillate to the action of a normally liquid amine soluble in the distillate, and a single ring phenol, in total amount not substantially in excess of 1 per cent."

The examiner originally rejected all of the applicant's claims. However, after the final rejection, an affidavit was presented by the applicant, as a result of which the examiner allowed claims 6 and 12, and as to which he said: " * * * It is noted that an affidavit has been submitted since the final rejection was entered, which tends to show that a certain amine used with a phenol would give less gum than either of these inhibitors used severally. In view of this, the examiner would be inclined to allow specific claims.".

As to the remainder of the claims, the examiner stated: "The action of gum inhibitors is catalytic, it being generally accepted in the art that there is no prediction as to operativeness of large classes of compounds. This is broadly substantiated by Mead and Somerville. It is further pointed out that applicant's disclosure is very meager and insufficient even under the doctrine of In re Ellis, 167 O. G. 981, or Chipman v. Reade, 16 U. S. Pat. Q. 2, to support such broad classes of compounds as amines, or phenols. This is pointed out specifically in paper No. 6. The term 'normally liquid amine' may be interpreted upon practically all amines, since amines are usually liquid normally. The term 'amine' includes many thousands of compounds, many of which would be of doubtful operativeness when used alone, such doubt assuming large proportions when the operativeness of the amine is considered in combination with other inhibitors. When the final test of unusual result produced in the combination applied to all substances within the scope of the broad claims is considered, the holding of undue breadth appears to be proper."

The Board of Appeals agreed with the conclusion of the examiner, stating, also: " * * * While applicant's specification mentions two particular amines either of which may be used, this disclosure is regarded as not warranting the broad definition of amine recited in the appealed claims."

References were cited by both tribunals below, as follows:

Brooks, 1,748,507, February 25, 1930.

Somerville (British), 289,347, April 27, 1928.

Mead, Journal of Industrial and Engineering Chemistry, vol. 19, pp. 1240–1245 (1927).

The affidavit referred to by the examiner is that of John P. Smoots, an expert in chemical engineering, which affidavit does not appear in the printed record but was brought here in answer to a writ of certiorari. Affiant states, in general, that he made tests, in an approved method, of gum inhibitors, namely, triamylamine, cresol, and hydroquinone, separately used with cracked petroleum distillates, and gives his results, showing gum inhibition in each case. He then combined triamylamine and cresol, and also triamylamine and hydroquinone, and used these combinations, separately, as inhibitors. The result of such combinations was a much greater inhibition than that which followed the use of either constituent thereof, separately. The affiant states that he is unable to explain such phenomena, but gives simply the result of the use of such combinations.

It was upon the strength of this affidavit that the examiner allowed claims 6 and 12, which are as follows:

"6. A process of inhibiting gum-formation in cracked petroleum distillates, which comprises subjecting the cracked distillate to the action of dinormal butylamine and normal amyl mercaptan, in total amount not much in excess of 1 per cent."

"12. A cracked petroleum distillate containing the reaction products of ingredients thereof and dinormal butylamine and nor-

mal amyl mercaptan, the total amount of the amine and mercaptan being not much in excess of 1 per cent."

The reference Brooks is a patent for a process of producing stable hydrocarbon oils which will not become discolored or sedimented. The specification of this patent recites that various amines may be used for such purpose. We have held, in the recent case In re Burk, 73 F.(2d) 497, 22 C. C. P. A. (Patents) ——, that this patent may be treated as anticipatory of a gum-inhibiting process, and further comment thereon is deemed unnecessary here.

The British patent to Somerville is for a process of inhibiting gum-formation in combustible organic liquids, including "cracked petrol," used for motor fuel. Somerville also has claims covering the product. The patentee accomplishes his object by adding certain substances to the distillate. He names many of these substances in his specification as examples, such as: "* * * aromatic hydroxy dihydroxy and trihydroxy compounds (e. g. phenols and cresols), amino compounds, amino phenols, and nitro aromatic compounds or combinations of these. * * *"

Again he states:

"* * * Phenol itself and other phenols and amines may be employed. * * *

"We have found, on the basis of this test, that the tendency to resinification is increased by certain substances e. g. acids, aldehydes and mercaptans, decreased by others, e. g. phenols, amino-phenols, nitro-benzene and amines while some substances such as water, alcohols, ethers, thiophene and carbon bisulphide, appear to have little or no effect. * * *

"The inhibitor which may consist of a single substance or a plurality of substances must have the following characteristic properties. * * *

"As examples of the phenolic bodies which may be employed as inhibitors we may mention aromatic hydroxy, dihydroxy, and trihydroxy compounds including cresols and amino phenols. Combinations of two or more inhibitors may be employed. * * *"

This record seems to fairly show that the action of the various substances used by appellant is catalytic, and that this was known to the art when appellant entered the field. The reference Mead is a discussion of certain catalytic agents to prevent deterioration of mineral oils, particularly adapted for use in commercial transformers. In making these tests, many amines, phenols, and other substances were used. The experimenter concluded: "* * * It seems to be quite impossible to draw any generalized conclusions from the results, as to the types of compounds which act as antioxidants, since for every compound which acts as a negative catalyst one of the same type can readily be discovered which acts as a positive catalyst. * * *"

From this last statement, the board here concludes that the fact that one amine or one phenol, or both, may act as gum inhibitors, does not establish that the whole class of such substances will do so.

Whether this Mead reference may be said to be applicable or not, it seems quite certain to us that the Brooks and Somerville references fully anticipate such claims here as call for the use of amines, or phenols, or a combination of both, as gum inhibitors. A reading of the excerpts from Somerville's specification heretofore quoted shows a plain disclosure of this.

This construction is sought to be avoided by the appellant by calling attention to the language of his claims, "*normally liquid amine soluble in the distillate*." (Italics are ours.) However, the examiner states, and appellant does not deny, that all amines "are usually liquid normally." In addition, Somerville discloses as to his inhibitor: "6. It must be capable of dissolving or uniformly dispersing in the fuel."

We conclude, therefore, that claims 3, 9, and 17, which are based upon the use of a combination of an amine with a phenol or cresol, are anticipated by the said references.

The second class of claims, consisting of claims 1 and 7, is based upon a combination of a normally liquid amine and either a normally liquid aliphatic mercaptan or a phenol. Here the claim must be read broadly. In re Horton, 54 F.(2d) 961, 19 C. C. P. A. (Patents) 871, 875. If it covers a combination of an amine and a phenol, it is met by Brooks and Somerville, as we have already stated. As they are capable of this interpretation, the rejection of these claims, also, must be sustained.

This leaves claims 2 and 8 for consideration, and these present more difficulties. They are based upon a combination of "a normally liquid amine" and "a normally liquid aliphatic mercaptan, containing not less than 5 carbon atoms."

It must be conceded that there is no teaching of the prior art of any such combination. None of the references disclose the use of a mercaptan as a gum inhibitor. Only once is a mercaptan named in the cited art, and that is in Somerville, where the patentee, in a portion already hereinbefore quoted, states that the tendency to resinification is *increased* by the use of mercaptan. Thus, we observe that appellant suggests the use as an inhibitor of a substance which, in the prior art, was thought to be a gum increaser. Instead of following the teaching of the art, appellant was proceeding contrary to it.

In his specification, the appellant states: "Quite a range of mercaptans may be availed of, but ordinarily the higher boiling mercaptans are desired, for example normal amyl mercaptan, iso amyl mercaptan, heptyl mercaptan," etc.

As to the amine element, which may be used, the appellant's specification states: "As amine component, an alkyl amine is preferred, and particularly a higher boiling amine, for example di-normal propylamine, di-normal butylamine," etc.

The appellant has in these claims suggested for the first time, so far as the record now before us discloses, that a combination of an amine and a mercaptan will inhibit gum-formation in cracked petroleum motor fuel distillates. In this respect, the inventive idea deals not so much with specific amines and mercaptans, as it does with the discovery that a combination of species taken from these genera will produce a gum-inhibiting effect.

However, here again we must consider the broad character of these rejected claims 2 and 8, as to the amine element of the combination. A distinction between patent applications involving chemical compounds, and those involving other products, has been recognized by the authorities. Our recent decision in In re Walker, 70 F.(2d) 1008, 1011, 21 C. C. P. A. (Patents) 1121, 1127, is a case in point. There we said: "It is true, as argued by counsel, that appellant is entitled to claim not only the substances enumerated by him in his specification, but also their equivalents. However, in cases of this character, involving chemicals and chemical compounds, many of which of course differ radically in their properties, it must appear in the specification, either by the enumeration of a sufficient number of the members of a group or by other appropriate language, that 'the chemicals or chemical combinations included therein were generally capable of accomplishing the desired result.' See In re Ellis, 37 App. D. C. 203; In re Dosselman, 37 App. D. C. 211; In re Langmuir, 62 F.(2d) 93, 20 C. C. P. A. [Patents] 733."

The applicant here does not allege in his specification, or show by the affidavit, that amines, normally liquid and soluble in the distillate, are "generally capable of accomplishing the desired result." The examiner states that all amines are usually liquid normally, and that there are "many thousands of compounds" included within the term "amines," "many of which would be of doubtful operativeness when used alone." There is no showing to the contrary. In addition, the reference Mead, while dealing with antioxidants in transformer oils, seems plainly to indicate and teach that some amines will act as catalytic agents and some will not, and that only experimental work will establish the efficiency of any particular substance.

Therefore, claims 2 and 8, also, must be held to be broader than appellant's disclosure, and to have been properly rejected.

The decision of the Board of Appeals is affirmed.

Affirmed.

LENROOT, Associate Judge, concurs in the conclusion.