**In re LANGMUIR.**
**Patent Appeal No. 3037.**

Court of Customs and Patent Appeals.
Dec. 19, 1932.

Charles E. Tullar, of Schenectady, N. Y. (Fairfax Bayard, of Schenectady, N. Y., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Sixteen claims of appellant's application for patent upon claimed "Improvements in Heating Process and Apparatus" were rejected by the Examiner, whose decision was affirmed by the Board of Appeals of the United States Patent Office. From the decision of the latter, the instant appeal was taken.

Seven claims stand allowed, and the appeal as to claim No. 6 is "no longer urged."

Of the apparatus claims at issue, No. 10 is quoted as representative:

"10. A heating apparatus comprising the combination of means for thermally dissociating hydrogen and means for directing a blast of molecular hydrogen across said means into thermal relation with a medium to be heated under such conditions as to cause recombination of the atomic hydrogen generated by said dissociating means into molecular hydrogen with the evolution of heat."

Claim No. 17 is representative of the process claims:

"17. The method of fusing metals which comprises maintaining an arc, supplying a nonoxydizing gaseous medium comprising hydrogen to said arc to produce a flame containing atomic hydrogen and subjecting the metals to be used to the action of said flame."

It is stated that the invention has been extensively used for electric welding. By suitably raising the temperature, it is claimed that " * * * a substantial part of the ordinary hydrogen, called molecular hydrogen, which is supplied to the arc, is changed at the arc into an entirely different kind or form of hydrogen known as atomic hydrogen."

The following are the references cited in the brief of the Solicitor for the Patent Office as being relied upon: Drösse, 641,767, January 23, 1900; Whitney, 902,354, October 27, 1908; Tommasini, 1,048,603, December 31, 1912; De Rouvre, 1,529,943, March 17, 1925; Doan, 1,535,365, April 28, 1925.

In the first decision of the Board of Appeals reference was made to a patent which, at the time of said decision, stood allowed to one Robert Palmer, and which was assigned to the assignee of applicant in the instant case. This Palmer patent was, in that decision, made a ground of rejection of claims 20, 24, and 26. Such proceedings were had, however, as that, in a decision later rendered, the Board modified its former decision as to the rejection upon Palmer, and we are not here concerned therewith.

All the apparatus claims on appeal, to wit, Nos. 10, 14, 24, and 26, were rejected upon Drösse supplemented by Tommasini, and three of them were also held to be too broad, as hereinafter more particularly stated.

In the Drösse patent an electric arc is formed between carbons or electrodes; a blast pipe with a nozzle being provided for discharging air or gas against the arc, which gas, according to the Drösse specifications, may include hydrogen. De Rouvre, Whitney, and Doan each discloses refractory metal electrodes.

The Tommasini patent relates to a hydro-electric smelting furnace in which the hearth thereof communicates with the crucible or reheater and the heating furnace. The arc is formed between a fixed electrode and a movable electrode situated in the heating furnace. A tube is connected to a pipe for supplying hydrogen gas, which, according to the specification, "should be superheated, the prefix 'super' serving to indicate that the hydrogen gas is heated above the melting point of the metal used in the smelting operation. * * * "

Appellant states that there is no suggestion in Drösse. that the blast gas hydrogen should be changed from molecular to atomic hydrogen; that there is "in fact no suggestion that this gas shall be depended upon to take up heat from the arc and deliver it to the metal"; that the reasons given in Drösse for its use "are of a different character"; that "so far as appears, the metal [in Drösse] is to be placed so close to the arc as to receive all the necessary heat directly from the arc," and adds: "Nor is there anything in the Tommasini patent to suggest that such devices as that of the Drösse patent should be changed in any way whatever, or used in any other way than that in which they had previously been used, i. e. with the arc applying its heat directly to the weld."

It is further argued that the Drösse patent does not disclose the apparatus defined in appellant's apparatus claims, and that Tommasini does not "teach that the Drösse device should be so constructed as to contain any such means."

The rejection of the process claims was based principally upon Tommasini; it being also held that certain of these (Nos. 16, 18, and 20) as well as three of the apparatus claims (Nos. 14, 24, and 26) are broader than appellant's invention, in that the claims are not limited to hydrogen as the gaseous medium while there is no disclosure in the specification of any other gas or medium than hydrogen. The Board also held as to these claims 14, 16, 18, 20, 24, and 26, that: "It may well be that some of the gaseous mediums contemplated by Drösse would pass through this dissociating action."

Appellant insists that the claims are not subject to rejection "merely because they do not restrict the invention to the use of hydrogen and thereby exclude other gases which might be similarly employed," and cites numerous authorities alleged to support his contention that: "Nothing is better settled in the law of patents than that an inventor is entitled to protection against others who make use of his invention with other specific means than those which he disclosed in his patent, whether or not these were known when his patent was granted."

As to the rejection of all the process claims, now at issue, upon the Tommasini patent, appellant contends that said patent does not disclose the process, and that the apparatus patent of Tommasini is incapable of carrying out the process of appellant. The reasons for these contentions are given in detail.

An affidavit of Dr. Langmuir, who is well known as an eminent scientist, was filed following an early decision of the Examiner in support of the contentions above recited. The Examiner held himself unauthorized to consider the affidavit, citing rule 76 of the Patent Office. The Board of Appeals, however, did consider it, saying: "We * * * fully recognize him [Dr. Langmuir] as an authority upon matters of this kind."

Our conclusions will be stated without attempting any elaborate analysis of the argu-

ment of appellant, or of the authorities cited in his quite comprehensive brief.

We are clearly of the opinion that the rejection of claims 14, 16, 18, 20, 24, and 26, upon the ground that they are broader than the disclosure of the specification, is correct upon both reason and the weight of authority. The particular point at issue is that relating to the change of a particular chemical, to wit, hydrogen, from a molecular state or form to an atomic state or form. The specification discloses no other chemical than hydrogen.

The principle that an inventor is entitled to protection against others who make use of his invention with means different from his own is, generally speaking, sound, and is supported by the authorities cited, but this principle, like practically all other general rules of patent law, has limitations, and the cases of In re Dosselman, 37 App. D. C. 211, Union Switch & Signal Co. v. Kodel Electric & Mfg. Co. (C. C. A.) 55 F.(2d) 173, and In re Marshall, 54 F.(2d) 421, 423, 19 C. C. P. A. 832, with their respective citations, support the contention of the Solicitor for the Patent Office that the rule "does not apply in chemical cases and cases where the properties of materials are concerned."

In the Dosselman Case, supra, the specification disclosed only one ketone, to wit, acetone. It was held that claims broad enough to cover other ketones were not allowable in that application.

In the Marshall Case, supra, this court held that, where the disclosure of the specification was limited to a specific element, viz. "steel of at least 0.5 per centum carbon," and did not disclose other "metals claimed to have the general physical characteristics of steel of at least 0.5 per centum carbon," a claim for the latter was properly rejected by the Patent Office on account of its breadth.

The foregoing ground of rejection applies to apparatus claims 14, 24, and 26, which are also, along with apparatus claim No. 10, rejected upon Drösse and Tommasini.

Taking claim No. 10, appellant, in his brief, points out two elements claimed to be lacking in the references, to wit:

"Means for thermally dissociating hydrogen."

"Means for directing a blast of molecular hydrogen across said means into thermal relation with a medium to be heated under such conditions as to cause recombination of the atomic hydrogen generated by said dissociating means into molecular hydrogen with the evolution of heat."

However, the Examiner points out that the claims are "drawn to structure," and that in the structure of Drösse there are certain features which "will produce" the function of the claims with no modification of "the structure or its mode of use." The Drösse structure is specifically in the welding art.

We are not convinced that there was error in the Board's affirmation of the Examiner's decision upon this ground.

As to the process claims: It has been heretofore stated that the rejections of Nos. 16, 18, and 20 were based both upon the reference Tommasini, and upon their breadth. As in the case of the apparatus claims, we feel the rejection based upon breadth is clearly correct. The reasons are the same in both instances, and the same authorities are applicable. The claims are for more than the specification discloses.

Also appellant fails to convince us that there was error in the rejections based alone upon Tommasini.

The affidavit has been carefully examined by us, and measured by what the experts of the Patent Office have held after they had weighed it fully. The claim as to the inoperativeness of Tommasini may be well founded as to the complete result which is sought, but we are unable to escape the force of the Board's reasoning as to the production of atomic hydrogen being inherent in Tommasini's process when the superheating there taught takes place. The process claims are for "the method of heating," or "the method of heating an object," as described.

If by reason of the arrangement of the Tommasini structure parts of it might be melted away when the superheating takes place, this fact would not negative a showing that Tommasini does disclose a "method of heating an object" which, in its nature, it seems to us, anticipates appellant's method.

The decision of the Board of Appeals is affirmed.

Affirmed.