In re WALKER.

Patent Appeal No. 3229.

Court of Customs and Patent Appeals.
May 31, 1934.

Edmund G. Borden, of New York City, and Stone, Boyden, Mack & Hahn, of Washington, D. C. (Kenneth I. White, of New York City, of counsel), for Walker.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 13, 21 to 27, inclusive, and 33 to 36, inclusive, in appellant's application for a patent for an alleged invention relating to a method of treating water-in-oil emulsions, for the purpose of "breaking down such emulsions into their oil and water components."

We quote the following claims:

"13. A method of treating a water-in-oil emulsion comprising mixing therewith a mixture of water-washed reaction products resulting from the incomplete sulfonation of a mixture of an aromatic body and a fatty acid."

"21. A process for breaking petroleum emulsions, characterized by subjecting the emulsion to the action of a demulsifying agent consisting of a mixture containing a condensation product of fatty an-organic detergent-forming group and an aromatic group, and other complex bodies produced by sulfonating a mixture of an organic detergent-forming compound and an aromatic compound.

"22. A process for breaking petroleum emulsions, characterized by subjecting the emulsion to the action of a demulsifying agent containing a *polycyclic aromatic* sulfonic group. (Italics ours.)"

"24. A process for breaking petroleum emulsions, characterized by subjecting the emulsion to the action of a demulsifying agent, comprising a condensation product containing naphthalene chemically combined with a fatty detergent-forming group.

"25. A process for breaking petroleum emulsions, characterized by subjecting the emulsion to the action of a demulsifying agent comprising a crude reaction mixture containing a condensation product of a phenol group chemically combined with a soap-forming radical.

"26. A process for breaking petroleum emulsions characterized by subjecting the emulsion to the action of a demulsifying agent consisting of a mixture comprising a condensation product containing a *hydroxy-aromatic group* chemically combined with a fatty radical, and other complex bodies produced by sulfonating a mixture of an *hydroxy-aromatic* compound and a fatty compound. (Italics ours.)

"27. A process for breaking petroleum emulsions, characterized by subjecting the emulsion to the action of a demulsifying agent comprising a mixture consisting of a condensation product containing a sulfo aromatic soap-forming group, and other com-

plex organic bodies produced by sulfonating a mixture of an aromatic compound and a soap-forming body."

"33. A process for treating petroleum emulsions, characterized by subjecting the emulsion to the action of a treating agent comprising a condensation product containing a *polycyclic aromatic group, an organic detergent-forming group*, together with a sulfonic group. (Italics ours.)

"34. A process for treating petroleum emulsions, characterized by subjecting the emulsion to the action of a treating agent comprising a condensation product containing a polycyclic aromatic and a fatty material, together with a sulfonic group."

"36. A process for breaking petroleum emulsions, characterized by subjecting the emulsion to the action of a demulsifying agent containing a sulfo naphthalene fatty group."

The references are:

Twitchell, 628,503, July 11, 1899.

Barnickel, 1,223,659, April 24, 1917.

Barnickel, 1,467,831, September 11, 1923, filed January 4, 1919.

Rogers, 1,299,385, April 1, 1919.

Lewkowitsch, Chemical Technology and Analysis of Oils, Fats and Waxes, London, 1915, vol. III, pp. 195, 196, and 247.

It appears from the record that appellant's application was in interference with patents to De Groote et al., Nos. 1,659,994, 1,659,995, and 1,660,003, and that priority of invention defined by the counts there involved was awarded to appellant. It further appears from the record that appellant copied claims 1 and 2 of the De Groote et al. patent No. 1,596,594, issued August 17, 1926, on an application filed October 1, 1925, and filed a motion under rule 109 of the Rules of the United States Patent Office for a declaration of an interference between that patent and appellant's application as to those claims.

The motion was denied by the Law Examiner, who held that the proposed counts were "restricted to a treating agent consisting of a condensation product containing a sulphonic and other groups, and exclude treating agents which contain other condensation products or compounds which affect its characteristics and function. The Walker application describes a treating agent which is a mixture of a condensation product, such as benzene sulpho stearic acid and other products, *the specific treating agent being only slightly soluble in water*. Benzene or naphthalene stearosulphonic acid is soluble in water (Twitchell, J. A. C. S., Jan., 1900, Vol.

22). It appears therefore that the other constituents of the Walker treating agent are present in such quantities as to materially affect its characteristics, or that Walker does not obtain a sulphonic acid as required by the proposed counts and in either event has no right to make them. It is true that the Walker specification states that the other components of his treating agent are small in amount, but they have, according to the applicant, an important function." (Italics ours.) The Law Examiner further stated that there was nothing in the De Groote et al. patent, No. 1,596,594, "to indicate that the patentees contemplated the use of a mixture or crude reaction product including the condensation product as a component. There is no reason for broadening the scope of a patented claim beyond its ordinary and reasonable meaning."

Thereafter, appellant amended claims 33 and 34 in his application, which were claims 1 and 2 of the De Groote et al. patent, supra, by striking out the words "consisting of" and substituting therefor the word "comprising." He did not request that the amended claims be put in interference with the De Groote et al. patent.

Appealed claims 13 and 35 were rejected by the Primary Examiner on two grounds: First, that they were broader than the invention disclosed in appellant's specification; second, that they were unpatentable over the reference Barnickel. The other appealed claims were rejected by the Primary Examiner as being broader than appellant's disclosure. Appealed claims 33 and 34 were also rejected on the ground that as appellant did not request in accordance with the provisions of rule 109, supra, that those claims be put in interference with the De Groote et al. patent, No. 1,596,594, supra, he was estopped from claiming the invention defined therein.

Although the Primary Examiner in his decision referred somewhat generally to the doctrine of estoppel, it is our understanding of his decision, and of that of the Board of Appeals as well, that it was intended to apply that doctrine to appealed claims 33 and 34 only.

With reference to claims 13 and 35, the Primary Examiner stated that, due to the language "incomplete sulfonation," contained in claim 13, and the language "the crude water-washed reaction product of the sulfonation treatment," contained in claim 35, neither of those claims was limited to the invention disclosed in the application, that is, a mixture that was only "slightly soluble in

water"; that the quoted language of those claims was indefinite in that it included any degree of solubility; and that as the patentee Barnickel disclosed at least a partially crude product, the claims were not patentable over that reference.

In view of the fact that appellant's specification defines a treating agent which is only slightly soluble in water, it is obvious that claims 13 and 35 are indefinite and broader in scope than the invention disclosed in appellant's specification. Nor are we able to hold that the Primary Examiner was wrong in holding that the patent to Barnickel disclosed "at least a partially crude product," and that those claims were, therefore, not patentable over that reference.

Claims 22 and 23 were held to be broader than appellant's invention in that, as stated by the Examiner: " * * * applicant's sole basis for the term 'polycyclic' is the disclosure of nap-thalene [naphthalene]. The properties of anthracene and phenanthrene are so markedly different from nap-thalene [naphthalene] that the examiner considers them beyond the scope of applicant's disclosure and not justified by it."

Although in his decision holding that appellant could not make claims 1 and 2 of the De Groote et al. patent, No. 1,596,594, hereinbefore referred to, the Law Examiner stated that as appellant had disclosed "naphthalene" in his specification, he was entitled to claim a "polycyclic aromatic group," we are of opinion, nevertheless that the Primary Examiner was right in holding in the case at bar, for the reasons assigned by him, that the disclosure of naphthalene only was not sufficient to support a claim for a "demulsifying agent containing a *polycyclic aromatic sulfonic group.*" (Italics ours.)

Claims 21 and 33 were rejected because of the language "organic detergent-forming group" contained therein. With regard thereto, the Examiner stated: "The examiner contends that applicant is entitled to no broader term than '*fatty* detergent-forming group' since the term 'organic' also embraces the 'rosins and similar body-s [bodies] and the petroleum acids such as *map*-thenic [naphthenic] acids' as disclosed by De Groote in his patent 1,596,594."

It will be observed that the Examiner's criticism of those claims is limited to the use of the term "organic." Counsel for appellant has called our attention to the fact that appellant's allowed claim 37 contains the expression "organic soap-forming acid"; that the terms "organic soap-forming acid" and

"organic detergent-forming group" have the same meaning and are used interchangeably; that both the Law Examiner and the Board of Appeals held, on a motion to dissolve in interference No. 56,898, involving, among others, claim 37, which was claim 1 of the De Groote et al. patent, No. 1,659,995, supra, and count 3 of that interference, that appellant could make that claim, and that, therefore, the decisions in the case at bar are inconsistent with the decisions of the Law Examiner and the Board of Appeals in that interference.

Although the term "detergent-forming" may be somewhat broader in scope than the term "soap-forming," the claims were not rejected for that reason.

It was stated in the decision of the Primary Examiner that claim 34 was rejected because of the use of the expression "organic detergent-forming group." However, it is apparent that that statement was made inadvertently, because there is no such language in claim 34. That claim does contain the language "containing a polycyclic aromatic," and, for that reason, is subject to the criticism applied by the Examiner to claims 22 and 23.

In view of the fact that the tribunals of the Patent Office not only held that appellant could make claim 37, which was claim 1 of the De Groote et al. patent, No. 1,659,995, but awarded him priority of the invention defined therein and as that claim has been allowed in the involved application, we are of opinion, considering the facts of record, that appellant is entitled to claim an "organic detergent-forming group." If there is any doubt as to his right to claim such group, the doubt should be resolved in his favor. We conclude, therefore, that claims 21 and 33 should not have been rejected because they include an "organic detergent-forming group." However, claim 33 is similar to, and is subject to the same criticism as, claims 22, 23, and 34, because it contains the language "containing a polycyclic aromatic." We are of opinion that claims 33 and 34 are unpatentable for the reasons assigned by the Examiner in his rejection of claims 22 and 23. In view of the fact that the Board of Appeals held that the appealed claims, including claims 33 and 34, were broader than the invention disclosed by appellant, our holding does not amount to a new ground of rejection.

Claims 25 and 27 were rejected by the Primary Examiner on substantially the same grounds assigned by him in rejecting claims 21 and 33. Claim 25 contains the term "a

soap-forming radical." Claim 27 contains the term "a soap-forming body." It is apparent from the decision of the Primary Examiner that he made no distinction, so far as the issues here are concerned, between the terms "a soap-forming *radical*" or "a soap-forming *body*," on the one hand, and "an organic detergent-forming *group*," on the other. (Italics ours.) If claim 21 is patentable, and we think it is, appellant is entitled to claims 25 and 27, which were rejected only because they contain terms equivalent to the term "organic detergent-forming group," contained in claim 21.

Claim 24 was rejected by the Primary Examiner, and properly so we think, because it is not limited to a crude emulsifying agent slightly soluble in water. In so holding, the Examiner referred to "Twitchell Jour. Am. Chem. Soc., Jan. 1900, pages 23 and 24," wherein he said in substance, it appears that a pure compound, soluble in water, may be prepared by combining naphthalene and fatty detergents.

Claim 26 was rejected upon the theory, as we understand the Examiner's decision, that, although appellant disclosed only one example of the hydroxy-aromatic group, "phenol," the claim was sufficiently broad, due to the language "comprising a condensation product containing a hydroxy-aromatic group," contained therein, to cover all members of that group. We are of opinion that the only proper deduction to be made from the decision of the Examiner with regard to that claim is that the hydroxy-aromatic group contains many compounds, some at least of which differ substantially in their properties. We think that claim was properly rejected.

Claim 36 was held to be broader than the invention disclosed by appellant, in that it defines a process for breaking petroleum emulsions, which consists of subjecting "the emulsion to the action of a demulsifying agent *containing* a sulfo naphthalene fatty group." (Italics ours.) The Examiner took the position, and properly so we think, that the claim was broad enough to include any chemical compound which had any of the sulfo-naphthalene fatty group "attached to it." The Examiner further called attention to the fact that the only member of that group referred to in the specification was "naphthalene." In other words, as we understand the Examiner's decision, even if the words "consisting of" had been substituted for the word "containing," the claim would, nevertheless, be subject to the criticism that only "naphthalene" of the "naphthalene fatty group" was disclosed by applicant, and that the disclosure of only one member of that group is not sufficient to warrant a claim broad enough to include the entire group.

The decision of the Primary Examiner was affirmed by the Board of Appeals.

It is true, as argued by counsel, that appellant is entitled to claim not only the substances enumerated by him in his specification, but also their equivalents. However, in cases of this character, involving chemicals and chemical compounds, many of which of course differ radically in their properties, it must appear in the specification, either by the enumeration of a sufficient number of the members of a group or by other appropriate language, that "the chemicals or chemical combinations included therein were generally capable of accomplishing the desired result." See In re Ellis, 37 App. D. C. 203; In re Dosselman, 37 App. D. C. 211; In re Langmuir, 62 F.(2d) 93, 20 C. C. P. A. 733.

We are unable to hold, in the case at bar, that appellant's disclosure is sufficient to support claims 13, 22, 23, 24, 26, and 33 to 36, inclusive. In view of the fact that we concur in the conclusion reached by the tribunals of the Patent Office that claims 33 and 34 are broader than the invention disclosed in appellant's specification, and are, therefore, unpatentable, it is unnecessary for us to consider the applicability of the doctrine of estoppel, and we do not do so.

For the reasons herein stated, the decision of the Board of Appeals is modified, being reversed so far as it applies to claims 21, 25, and 27, and in all other respects affirmed.

Modified.