25 C.C.P.A.(Patents)

## In re SOLL.
## Patent Appeal No. 3964.

Court of Customs and Patent Appeals.

June 27, 1938.

Gordon C. Mack, of Akron, Ohio (R. H. Waters, of Akron, Ohio, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Ten claims of appellant's application for a patent relating to a certain process and product more particularly described hereinafter were allowed by the Primary Examiner of the United States Patent Office, and claims 13 to 25, inclusive, were rejected. Upon appeal to the Board of Appeals, the decision of the examiner was affirmed. After appealing to this court, appellant moved to dismiss the appeal as to claims 22 and 23, which motion will be allowed.

Claims 13, 14, 17, and 21 are illustrative of the remaining appealed claims and follow:

"13. In a process for producing a compound of a hydrogen halide and a butadiene body, the step of subjecting said butadiene body directly to the action of liquefied hydrogen halide.

"14. The process of preparing a hydrohalide addition product of a butadiene body, which comprises reacting a butadiene body with a dry hydrogen halide in the presence of an excess of said hydrogen halide and in the absence of a solvent to form the hydrohalide addition product of said butadiene body and evaporating off any unreacted hydrogen halide to isolate said addition product."

"17. As a new product, a butadiene hydrohalide addition product obtained in accordance with the process defined by claim 14."

"21. In a process for producing a compound of hydrogen halide and rubber, the step of subjecting rubber to the action of liquefied hydrogen halide for a time sufficient to produce only a partial reaction between the hydrogen halide and the rubber."

The invention relates to plastic materials and discloses, as is shown by allowed claim 1, a process which comprises reacting upon rubber with hydrofluoric acid. Claim 1 follows:

"1. The process which comprises reacting upon rubber with hydrofluoric acid of a strength above about 40% by weight."

Four of the claims on appeal are drawn to cover the product of the said process and seven of the claims relate to the process. Some of the claims at bar were copied from the patent to Gebauer-Fuelnogg, 1,980,396, of November 13, 1934, for the purpose of interference, and while this patent is referred to in the decisions of the tribunals below, it is not used as a reference in the rejection of the claims.

The examiner rejected some of the claims upon four different grounds. The board disagreed with two of the grounds. The two remaining grounds of rejection are that claims 13, 14, 16, 17 and 18 "re-

cite broadly the reacting of a 'butadiene body' with a hydrogen halide." These claims were rejected as being broader than the invention for the reason that the term "butadiene body" is broader than the disclosure of appellant's application. Appellant discloses only the reacting of *natural rubber* with hydrofluoric acid. The second ground of rejection went to all the claims and was to the effect that they were broader than the invention in that they recite that the butadiene body or the rubber is reacted with a "hydrogen halide" which term is broader than the term "hydrofluoric acid." In view of our conclusion, it will only be necessary for us to consider the last ground of rejection.

The examiner's second ground of rejection is given in the quoted language which follows:

"Claims 13 to 25 have been rejected as not supported by the disclosure, and as broader than the invention. All these claims are characterized by reciting that the butadiene body or the rubber is reacted with a 'hydrogen halide;' applicant has disclosed that he can use only hydrogen fluoride, since no implied or direct statements can be found in the application, as originally filed, that the other hydrogen halides will react similarly to give the same product. The application deals with an apparently obscure and complex reaction in which the hydrogen fluoride appears to effect an intermolecular rearrangement in the rubber molecule, acting probably as catalytic agent. On the other hand, there is ample evidence that when the hydrogen chloride, bromide, or iodide reacts with rubber, there is obtained a rubber hydrochloride, bromide, or iodide which are definite chemical compounds. * * *"

The board stated:

"Taking up first the question of breadth of invention, appellant has referred only to rubber and hydrofluoric acid in his application as filed. He has undertaken to show by affidavits, however, that his process is applicable to other hydrogen halides and to other butadiene bodies.

"As a general rule, it is our opinion that in chemical cases, where an applicant does not refer to any substitutes for the particular material disclosed or give any indication that he regards his invention as generic in the application as filed, he is not entitled to broader claims than for the material originally disclosed. This question was discussed somewhat in Ex parte Sloane, 22 U.S.Pat.Q. 222. We consider, therefore, that the examiner's action in rejecting the claims as broader than his invention was clearly justified."

It is the contention of appellant here, in substance, that the class of hydrogen halides (sometimes called hydrohalides) includes hydrogen chloride, hydrogen fluoride, hydrogen bromide and hydrogen iodide, and that these in turn are sometimes called hydrochloric acid, hydrofluoric acid, hydrobromic acid and hydroiodic acid, respectively; that there are only four hydrogen halides; that they form a clearly defined group well known to all chemists; that rubber reacts with them to form the rubber hydrohalides, viz., rubber hydrochloride, rubber hydrofluoride, rubber hydrobromide and rubber hydroiodide; that the prior art shows that when rubber and other butadiene bodies are treated with hydrogen halides, certain compounds known in chemistry as "addition products" are formed and that the prior art establishes that all the hydrogen halides are equivalents and have the same action. Appellant claims that since he has disclosed one (hydrofluoric acid) of the small group to which it belongs and that since chemists understand that the other three hydrogen halides are equivalents in their action, he is entitled to claim in his application the whole group of hydrogen halides broadly. In other words, it is argued that having disclosed only one species of a well-known group of chemicals, applicant is entitled to the allowance of claims covering the whole group. If he is not allowed to claim the whole group broadly, it is argued that he will have no protection for his invention.

The Solicitor for the Patent Office asserts that the disclosure of one species only is not sufficient to entitle an applicant to claims covering all the members of a group, citing In re Walker, 70 F.2d 1008, 21 C.C.P.A., Patents, 1121; In re Burk, 74 F.2d 547, 22 C.C.P.A., Patents, 857; and In re Steenbock, 83 F.2d 912, 23 C.C.P.A., Patents, 1244. In the solicitor's argument, no distinction seems to be made in applying the rule in mechanical applications and chemical applications.

We think the rule relating to the allowance of generic claims upon a disclosure of one or more species has been given particular application in chemical cases and is referred to by the appellant as the so-called "rule in chemical cases." The

625

rule is properly stated in the above-quoted language of the board.

Appellant argues that where the rule has been announced in chemical cases, it has been in connection with the *patentability* of claims which were then under consideration, and that since some of the claims on appeal here have been allowed in the Gebauer-Fuelnegg patent, patentability is not involved, and the decisions relied on therefore are not pertinent.

We agree with the Solicitor for the Patent Office in his answer to this argument that the *patentability* of the claims at bar is involved here. But, of course, the issue now at hand relates only to the patentability of the claims upon a particular disclosure.

 We think the rule is well settled that in a chemical case where an applicant discloses that one species of a class of chemicals will accomplish a certain purpose without naming any others of the class to which it belongs or without so describing the species and its mode of operation as to call attention to the fact that other members of the class are its equivalents and will perform the same function, he is not entitled to broaden the scope of his disclosed invention by claiming the whole group, even though those skilled in the art may know that in some respects at least the different members of the group are equivalents. Certain members of a well-defined group of chemicals may be equivalents for one purpose and not equivalents for another. Experimentation is required to ascertain the particular action of a member of the group upon the particular material to be treated. Appellant's application is barren of any suggestion that anything but hydrofluoric acid will react upon rubber in the desired manner. There is no teaching in the application of the equivalency of the members of the group nor is there any member of the group named other than hydrofluoric acid. As far as the application discloses, the art was not taught that it could use anything but hydrofluoric acid and it would seem improper to now permit applicant to broaden the scope of his invention since others, presumably after experimentation, have discovered that any member of the hydrogen halide family will do the work.

In Re Steenbock, supra, where the applicant disclosed a process involving subjecting yeast to irradiation, this court held that he was not entitled to a claim for a process applied broadly to fungus material. In discussing the question the court said (page 913):

"The principle is well established in chemical cases, and in cases involving compositions of matter, that the disclosure of a species in a cited reference is sufficient to prevent a later applicant from obtaining generic claims, although the disclosure in an application of a species may not be a sufficient basis for a generic claim. See In re Ellis, 37 App.D.C. 203; In re Dosselman, 37 App.D.C. 211; In re Langmuir, 62 F.2d 93, 20 C.C.P.A.(Patents) 733; In re Walker, 70 F.2d 1008, 21 C.C.P.A. (Patents) 1121, 1127; In re Burk, 74 F.2d 547, 22 C.C.P.A.(Patents) 857.

"Although appellant's involved application was originally alleged to be a true division of his application No. 157,430, filed December 27, 1926, which matured into patent No. 1,871,136, August 9, 1932, there was no disclosure in that application of the involved process as applied to fungus material generally—the process there disclosed being limited, so far as fungus material is concerned, to yeast. Accordingly, although described as a true division of his original application, appellant, by an amendment to the involved application, dated December 7, 1933, substituting the language 'continuation in part' for the word 'division,' conceded that it was not a true division, and that his original disclosure was limited to a process involving yeast only.

"Applying the rule hereinbefore stated, it is perfectly clear that appellant is not entitled to the broad claims here on appeal."

The rule as above stated is so well settled that extended discussion of the authorities is deemed unnecessary. The Steenbock Case, supra, seems to be squarely in point and the other cases cited by the Solicitor for the Patent Office clearly support the conclusion herein reached.

The decision of the Board of Appeals, affirming that of the examiner, for the reasons stated, we think, was without error. The appeal as to claims 22 and 23 is dismissed. As to the remaining claims— 13 to 21, inclusive, 24 and 25—the decision of the Board of Appeals is affirmed.

Affirmed.