28 C.C.P.A.(Patents)

## In re BOUTON et al.

### Patent Appeal No. 4453.

Court of Customs and Patent Appeals.
June 9, 1941.

J. W. Schmied, of New York City, for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming that of the Primary Examiner, rejecting, in view of the prior art, all of the claims, 2, and 8 to 13 inclusive, of an application for a patent for an alleged new and useful improvement in a lead alloy particularly suitable for an electrical cable sheath.

The claimed invention is sufficiently described in the following illustrative claims:

"2. An alloy consisting of 99.75 per cent lead and .25 per cent antimony."

"12. A cable sheath made of a lead-antimony alloy which is made from lead containing the usual impurities of commercial standards of lead and uncombined antimony up to but not more than can be held in solid solution at maximum atmospheric temperatures.

"13. A cable sheath made of a single phase homogeneous alloy consisting of a solid solution of antimony in lead approaching but not exceeding saturation at ordinary atmospheric temperatures."

The cited references are:

Pfeiffer, 57,184, August 14, 1866.

Wiseman et al., 1,973,302, September 11, 1934.

Yoshikawa (British), 253,920, March 10, 1927.

Yoshikawa (British), 277,199, September 15, 1927.

The claims were rejected by the Primary Examiner on the grounds of undue multiplicity and on the references.

The Board of Appeals held that "The number of the claims is very moderate" and thus in effect reversed the decision of the Examiner on the question of multiplicity but affirmed the decision upon prior art said to be disclosed in the Wiseman et al. and the Yoshikawa, 253,920 references. The board stated that neither the Pfeiffer patent, nor the Yoshikawa 277,199, were especially pertinent. Therefore in our consideration of the appeal we will confine out discussion to the patentability of the claims in the light of what the board considered to be the pertinent references.

■ Subsequent to the submission of the appeal, counsel for appellants filed in this court a paper stating that claim 10 is withdrawn from the appeal. Treating this paper as a motion to dismiss the appeal as to claim 10, the appeal as to that claim will be dismissed.

■ The Wiseman et al. patent is directed to an alloy of lead particularly adapted for sheaths of electric power cables. The alloy comprises lead 98.85 per cent to 99.75 per cent, antimony .25 per cent to 1 per cent and vanadium .005 per cent to .15 per cent.

The Yoshikawa patent No. 253,920, relied on by the board, relates to alloys of lead and comprises according to its claims pure lead and a bismuth content of from .025 per cent to 4 per cent. In the specification it is stated that the bismuth content may be 10 per cent.

The Board of Appeals considered the Wiseman et al., patent to be the most pertinent reference stating:

"If we take the proportions of lead 99.75% approximately and antimony .25% and vanadium .005% we have a proportion of lead and antimony desired for the normal production of a saturated solution of antimony in lead as suggested by appellants although there is no definite teaching in Wiseman et al. that such a saturated solid solution is formed. With the small proportion of vanadium .005%, it might be considered a trace of impurity and appellants do not argue to the contrary. They urge that, following the teaching of

the Wiseman et al. patent, a certain amount of vanadium is desirable to accomplish their result. The patentees do not describe the purpose of vanadium and there might be some question as to the effect of vanadium in such small percentage as .005%. The fact that the patentees teach also a much larger amount of vanadium does not discredit the patent as teaching substantially the proportions of lead and antimony suggested in claim 2, for instance, with a trace of vanadium which might have very little effect and be considered an impurity.

"In any event, we believe the claims are properly rejected in view of this reference. The claims call for an alloy consisting of the two elements lead and antimony and Wiseman et al. have an additional element, vanadium, but for reasons stated we believe that Wiseman et al. at normal temperatures would produce a saturated solid solution of antimony in lead. At least we have not been definitely shown to the contrary."

As concerns the Yoshikawa patent No. 253,920, the board had the following to say: "As to the British patent No. 253,920, which describes the combination of bismuth and lead for the purpose of increasing the use of such lead for various purposes, appellants have shown by an affidavit that bismuth is quite different from antimony even though classed in the same group in the periodic system. But we note that the claims of the British patent call for a proportion of lead and bismuth in which the bismuth content is approximately .25% the same as disclosed in the present claims. We find a teaching in this patent of proper percentages of bismuth in lead to form a solid solution and that would lead one to try the same percentage of antimony and lead for the same purpose. At least we are not convinced that the examiner was in error in rejecting the claims."

It seems to us on the record presented that neither of the references relied on by the board anticipates the claimed invention of appellants. The Wiseman et al. patent definitely sets out vanadium in its alloy and regardless of how small the amount of vanadium may be the patentees certainly attribute to its presence the advance in the art claimed in the patent. The specification states: "The lead alloy of the present invention is strong and tough, but not

brittle. Its physical properties, such as tensile strength and elongation, show it to be much superior to ordinary lead, in that its tensile strength is much higher and its elongation lower. Where with ordinary lead the yield point is very low, the yield point of our alloy is only slightly less than its ultimate strength. This is most helpful as it permits of a very much higher internal pressure in a cable without stretching of the sheath. For example, we have noted for the same size sheath and wall thickness an expansion six to eight times as much for ordinary lead as for our alloy. This is due to the remarkable homogeneity of the mixture and small grain or crystal structure. The usual types of alloys of lead, such as tin and lead or antimony and lead, do not act in a similar manner. In fact, one of the objections to the use of such alloys is the case of segregation of the tin or antimony before sheathing. This does not occur with the alloy of the present invention. Furthermore, the thorough mixing of the materials of our alloy aids greatly in obtaining a uniform sheath, thereby improving the stability and strength of the sheath in service."

It appears to us that the Wiseman et al. patent instead of making the claimed invention of appellants obvious to one skilled in the art would in fact teach just the opposite—i. e., the necessity of using vanadium in some quantity.

If in its discussion of the Yoshikawa patent No. 253,920, the board had been specific, in the face of the clear and complete affidavit offered on behalf of appellants by one highly skilled and specially trained in the art, as to why it held that .25% of bismuth is the equivalent of a like percentage of antimony, the decision might have embodied a clear cut reason for rejecting the claims upon the patent instead of the statement: "At least we are not convinced that the examiner was in error in rejecting the claims."

It is clear that the Yoshikawa patent No. 253,920, does not contain the elements of the alloy of appellants. It is also clear from the affidavit that while bismuth and antimony may belong to the same family of elements the limit of solubility of antimony in lead is about .25% while for bismuth the figure is about 18% or 72 times as much. A table is presented in the affidavit showing that bismuth is not the equivalent of antimony as follows:

| | Bismuth | Antimony |
|---|---|---|
| Atomic Weight | 208 | 120.2 |
| Specific Gravity | 9.78 | 6.62 |
| Melting Point ° C | 269.2 | 630 |
| Eutectic temperature with lead | 125°C. | 247°C. |
| Eutectic composition with lead | 58% Bi | 12% Sb |
| Maximum solid solubility in lead | 18% Bi | 2.5% Sb |
| Solubility in lead at room temperature | 18% Bi | .25% Sb |

Therefore in view of these differences as shown by the table it seems that the quantity of bismuth is not the equivalent of a like quantity of antimony in a lead alloy.

It was old in the art to use an alloy comprising lead and antimony alone but in alloys of that character 1% of antimony was used. It was discovered by research that the reason the old cable sheaths comprising lead and 1% of antimony became age hardened and subject to deterioration and cracks was that the mixture resulted in a supersaturated solution, which on cooling or aging, caused a precipitation of the antimony in small worked sections resulting in the formation of solid pieces of antimony surrounded by a matrix of softer metal (lead) which led to cracking.

That there was a problem in the manufacturing of a lead alloy the solution of which would result in longer life to lead sheath cables and consequently to less expense in their replacement and repair is apparent from the affidavit. It is also apparent that the making of the material for lead sheathing by appellants in the stated proportions is the result of long study of cable sheathing materials in a successful effort to solve the said problem.

In our opinion neither of the references relied upon by the board discloses anything that can be properly considered anticipatory of the invention claimed by appellants, nor do the references singly or taken together make it obvious to one skilled in the art to make the alloy or sheaths of appellants.

The motion to dismiss the appeal as to claim 10 is granted. As to all other claims the decision of the Board of Appeals is reversed.

Reversed.