37 C.C.P.A. (Patents)

### Application of MEYER.

### Patent Appeal No. 5639.

United States Court of Customs and Patent Appeals.

Dec. 12, 1949.

--------

Campbell, Brumbaugh, Free & Graves, New York City (Leland L. Chapman, New York City, and Martin T. Fisher, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Judges.

JACKSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner, finally rejecting as unpatentable all of the involved claims, 1, 3, 7, 8, 11, 12, 14, 15, 16 to 20, inclusive, and 22, of an application for a patent, serial No. 494,590, filed July 13, 1943, entitled "Process of Treating Yellowish or Off-White Materials to Obtain a White Appearance."

The application relates to a process of treating textile materials, such as yarns, woven or knitted fabrics, paper and pulp products, having a yellowish or off-white tint, so as to obtain a pure white appearance.

In the process, the articles may be treated at any stage of their manufacture or subsequent thereto by contacting them with a solution of a blue fluorescent compound of the coumarin group, preferably umbelliferone or methyl umbelliferone and aliphatic or aromatic derivatives thereof. The solution perferably contains a small amount of mild alkaline material, which, it is said, facilitates the solution of the compound and increases the fluorescence. The fluorescent material may be used simultaneously with a washing operation in which soap or other detergent is used, or preferably following a washing, such as in a rinse. The example set out in the application discloses a solution comprising 10,000 parts by weight of water, about 24 parts of borax and one part of methyl umbelliferone.

Claims 12, 14, 15, 17, 18 and 22 are article claims, the other claims being for process.

The tribunals of the Patent Office considered claim 1 to be representative of the process claims, and appellant in his brief has set up claim 12 as representative of the article claims. No distinction has been made in the treatment of the process and article claims by the board with the exception of claim 19. In addition to claim 19, claim 11 was separately considered by the Primary Examiner. Apparently the reason for such want of distinction between the two classes of claims was that patentable novelty in each claim depends upon the definition of the composition or material used.

Claims 1, 11 and 19 are considered representative of the claimed patentable material in issue and read as follows:

"1. The process of treating articles, substances and materials having a yellowish off-white tint, which comprises contacting the same uniformly with a solution of a compound of the coumarin group as the only material to affect the characteristics of the articles, substances and materials being treated, and which compound when dissolved produces a blue fluorescence whereby the yellowish off-white tint is eliminated and a pure white appearance is obtained.

"11. The process of treating textile fabrics having a yellowish off-white tint, which comprises contacting the textile fa-

bric uniformly with a weakly alkaline soap containing aqueous solution consisting of an alkyl substituted umbelliferone which when dissolved produces a blue fluorescence, whereby the yellowish off-white tint is eliminated and a pure white appearance is obtained.

"19. The method of improving the clearness and brightness of fibrous materials deficient in light reflecting properties under ordinary visible light which comprises treating the same with a small fraction of 1% of an organic substance emitting light of predetermined wave length under ordinary visible light, said predetermined wave length being selected to compensate for the deficiency of reflected light of the material treated by emitting light of a wave length missing in the reflection spectrum of the untreated material under ordinary visible light."

Appellant filed an application for a patent, having the same entitlement as the involved application, in Great Britain on June 2, 1939, which matured into British patent No. 522,672, dated June 24, 1940. The application in issue here, which is said to be a corresponding United States application, was not filed until a little over four years subsequent to the British filing date because of the war.

The examiner made three statements with respect to his rejections. In the first statement all of the claims, with the exception of claim 11, were rejected as fully anticipated by appellant's British patent. All of the claims were further rejected as unpatentable over the Axelrad patent, No. 2,341,009, February 8, 1944.

In the examiner's second statement, which was supplemental to the first, he withdrew the British patent as a reference for the stated reason that appellant had complied with the provisions of 60 Stat. 940 (1946), 35 U.S.C. § 101 (1946), 35 U.S.C.A. § 101, and was therefore entitled to the filing date of his British patent as to all claims except claims 2, 4, 9, 10 and 11. He added another reference, Ultrazell (Fr.) 803,753, July 20, 1936, and further rejected claim 19 on the ground that it was not fully disclosed in the application.

The Ultrazell patent has for its object a starch preparation for starching or sizing linen or other textiles. It is said that the process employed in the invention consists in the treatment of textiles, linen in particular, with a starch containing fluorescent chemical products, instancing ultraline (sodium beta methyl umbelliferone acetate). The patent depicts the starch preparation as follows: "The starch obtained in conformity with the invention is distinguished, furthermore, by the fact that by the addition of fluorescent materials soluble in water a homogeneous distribution of the substance is rendered possible. Thus we obtain, as compared with ultramarine blue soluble in water or analogous products a better shading of the starch as such or of the textiles treated by it." and speaks of the results of the process of the patent by stating that: "The textiles treated according to the invention have, after the starching, a pretty white color which may have, depending on the quantity or the nature of the fluorescent substance applied, a slighter shading toward another color, for example blue or rose. Furthermore the invention combines in a single operation the processes of bleaching, bluing and starching which have been followed, at least in part, up to the present."

The examiner in his supplemental statement held claims 1 to 10, inclusive, 12 to 18, inclusive, and 20 to 22, inclusive, to be unpatentable over the Ultrazell patent because he deemed that no invention would be involved by omitting the starch of the patent and its function. The examiner held that claims 1, 3, 7, 8, 12 and 14 to 18, inclusive, do not distinguish over the Ultrazell patent because the meaning of the phrase in each of those claims, "as the only material to affect the characteristics of the textile fabrics," is doubtful. He stated that starch does not have any chemical effect on fabrics and that just what characteristics would remain unaffected is not specified.

Claim 11 was deemed unpatentable over the Ultrazell reference because, as the examiner stated, "Apparently all alkaline substances are equally well suited for aiding the dissoution [sic] of the umbelliferone. Borax is the alkaline agent in the only de-

tailed example of applicant, and borax is shown by Ultrazell."

Claims 2, 4, 9, 10 and 11 were held to be anticipated by the Axelrad patent, the examiner stating that no support for those claims appeared in appellant's British application, for the reason that it did not disclose the use of alkaline materials broadly, nor the use of soap specifically. That statement was made despite the fact that in appellant's British application the use of borax is disclosed, obviously as an alkaline material.

The examiner pointed out that claim 19 of the involved application is claim 1 of the Axelrad patent, which was copied by appellant for the purpose of provoking an interference. He rejected that claim, because, as he stated, there was no basis for a claim as broad as claim 19 in appellant's specification. In that connection, the examiner stated that the disclosure of appellant is limited to the treatment of yellow off-white fibrous material with coumarin compounds having a blue fluorescence.

In a third statement, the examiner reversed his holding that appellant was entitled to the filing date of his British application, basing his holding on a decision of the Commissioner of Patents in the case of In re Application Filed August 1, 1939, reported at 599 O.G. 537, but held that with such exception his original statement and the additional rejections were fully applicable to the claims.

Appellant withdrew claims 2, 4, 9, 10 and 21 from his appeal to the Board of Appeals, so that as it came to the board all of the involved claims had been rejected as being barred by the British patent and also unpatentable over the prior art. Claim 19 had been further rejected because of insufficient disclosures in the application.

The board affirmed the decision of the examiner, but stated its reason for not considering the Axelrad patent as follows: "The rejection of the claims on the patent to Axelrad need not be considered, in our opinion, since if appellant is debarred from receiving a patent in view of his prior British patent, the rejection is a moot ques-

tion. On the other hand, if appellant is entitled to the filing date of his prior British patent, then the effective filing date of the Axelrad patent is antedated."

As to claim 11, the board only held that the limitations therein are not patentable over the Ultrazell reference because the patentee discloses the use of borax, which is an alkaline agent fully equivalent to a weakly alkaline soap.

With respect to claim 19, the board was of opinion it is a very broad definition of the umbelliferone or one of its alkyl-substituted homologues disclosed by appellant, "* * * whereas the Axelrad patent names a large class of natural materials as well as numerous types of specific compounds which are suitable in his process and which are sufficient to satisfy the broad definition of the fluorescent material defined in the claim. We do not think that the scope of this claim is satisfied by the meager disclosure of coumarins and and [sic] methyl and ethyl substituted coumarins. It has not been overlooked that aliphatic and aromatic radicals are broadly referred to at the bottom of page 3 of the specification as being possible substituents, but the only examples of suitable substituents, falling within these broad groups are the two lower aliphatic substituents, ethyl and methyl. No example of an aromatic substituent is mentioned."

█ Counsel for appellant requested the board to reconsider its decision in view of the presentation to it of additional evidence to the effect that appellant was entitled to the benefit of 60 Stat. 940 (1946), 35 U.S. C. § 101 (1946), 35 U.S.C.A. § 101. That evidence in affidavit form was presented as proof of appellant's German citizenship within the meaning of Article 5 of a German decree of November 14, 1935, a duly authenticated copy of which was appended to and made part of the affidavit. Appellant is a Jew, and the decree defined members of that race in terms of the German law. Because he was of that race, he was deprived of his citizenship in the Reich by virtue of article 4 of said decree on the date thereof. In view of the additional evidence, the board concluded that appellant

was not a citizen of the German Reich when he made his invention in 1938 or 1939, and it further being shown that he was a British subject at the time his petition under 60 Stat. 940 (1946), 35 U.S.C. § 101 (1946), 35 U.S.C.A. § 101, was filed, the board held that he was entitled to the benefits of that law, and therefore could rely upon the filing date of his British application. The board modified its decision, reversing the examiner's rejection that the British patent was a statutory bar, but in other respects adhered to its decision.

It will be noted that the board held if appellant were entitled to the filing date of his British patent, that the effective filing date of the Axelrad patent would be antedated. Therefore, the Axelrad patent may not be properly considered as a reference herein, and rejections made by the examiner on the Axelrad patent have been reversed by the board.

Our consideration of the appeal is confined to the question as to whether or not the claims, excepting claim 19, are unpatentable over the Ultrazell reference, and whether or not the requirements of claim 19 are satisfied by appellant's disclosure.

It is clear that the Ultrazell patent relates to a starch preparation, it being stated therein that its objective is a "starch preparation for starching or sizing linen or other textiles." The patentee treats his textiles with a starch containing fluorescent chemical products, instancing sodium beta methyl umbelliferone acetate, a substance closely related to appellant's preferred methyl umbelliferone. He states that by adding the fluorescent materials, soluble in water, he obtains a homogeneous distribution of the substance and that the use of his starch containing the said chemicals on textiles results in a beautiful shading of the starch and the textiles treated by it. Apparently the patentee was concerned entirely with a treated starch, as it is starch that is emphasized throughout his specification and in all of his claims. There is no suggestion in the patent that the fluorescent compound may be used alone or that a satisfactory whitening effect could be obtained apart from the starch. It seems to us that Ultrazell taught the art that the presence of starch is responsible for the results he obtained. He clearly sets forth in his specification that the use of starch is essential in producing a uniform distribution of the fluorescent material, and a necessary ingredient. We find nothing in the patent to suggest that the use of the fluorescent substance to produce a whitening effect is possible without it being mixed with the starch.

As far as the record is concerned, it is reasonable to conclude that appellant was the first to discover that a blue fluorescent compound could be used as appellant's application sets forth, in order to whiten yellowish or off-white materials. If there was any prior art or publication in existence, contrary to such conclusion, we think that it would have been known to those skilled in the art and to the experts of the Patent Office. No such knowledge is shown in the record.

■ Of course the Ultrazell patent does not teach the use of starch itself as producing the whitening effect, but to our way of thinking, he believed that an even distribution of the fluorescent compound, which produces the whitening effect, could not be obtained without the presence of starch. It seems reasonable to us that, if the patentee had any idea of the uniform whitening effect of the chemical compound without the use of starch, he would have disclosed it. In our opinion the teaching of the Ultrazell patent is directly opposed to that of appellant's application. In re Bouton et al., 120 F.2d 345, 28 C.C.P.A., Patents 1233.

■ Claim 19, it will be remembered, is claim 1 of the Axelrad patent and was copied by appellant for the purposes of interference, and was rejected solely on the ground of lack of sufficient disclosure in the involved application. An analysis of claim 19 shows that the process defined therein " * * * comprises treating the same (fibrous materials) with a small frac-

936

tion of 1% of an organic substance emitting light of predetermined wave length under ordinary visible light, * * * ." The part of the claim preceding the quoted portion is merely a preamble and that part of the claim which follows the quoted portion is a functional statement of the manner in which the selection of the wave length brings about the results of the process.

Appellant treats the material to be worked upon with a coumarin compound, preferably umbelliferone, which is an organic substance emitting light of predetermined wave length under ordinary visible light and the proportions used in appellant's process are one part of methyl umbelliferone to 10,000 parts by weight of water with about 24 parts of borax. Clearly that disclosure of appellant is sufficient to meet the process steps of the claim. It is not denied by the tribunals of the Patent Office that the coumarins disclosed by appellant do not do so. It would seem that the rejection of claim 19 is based on the fact that the Axelrad patent discloses a larger number of compounds than is shown by appellant.

The rejection of claim 19 is sought to be upheld in the brief for the Commissioner of Patents by the citation of the following cases: In re Ellis, 37 App.D.C. 203; In re Walker, 70 F.2d 1008, 21 C.C.P. A., Patents 1121; In re Steenbock, 83 F.2d 912, 23 C.C.P.A., Patents, 1244; In re Oppenauer, 143 F.2d 974, 31 C.C.P.A., Patents, 1248. All of those cases, however, relate to chemical action, and since no such action is involved in appellant's process for the reason that his whitening material is only a physical mixture, and because in the brief of the solicitor it is not argued that chemical action is involved in appellant's process, we are of opinion that those cases are not apposite.

In the case of In re Burk, 74 F.2d 547, 22 C.C.P.A., Patents, 857, we stated that, as recognized by the authorities, there is a distinction between a patent application involving chemical compounds and those involving other products. We quoted with

approval from the case of In re Walker, supra [70 F.2d 1011], as follows: "It is true, as argued by counsel, that appellant is entitled to claim not only the substances enumerated by him in his specification, but also their equivalents. However, in cases of this character, involving chemicals and chemical compounds, many of which of course differ radically in their properties, it must appear in the specification, either by the enumeration of a sufficient number of the members of a group or by other appropriate language, that 'the chemicals or chemical combinations included therein were generally capable of accomplishing the desired result.' See In re Ellis, 37 App. D.C. 203; In re Dosselman, 37 App.D.C. 211; In re Langmuir, 62 F.2d 93, 20 C.C.P. A., Patents, 733."

We think that the rule stated in those cases is appropriate to the facts here. It also appears that the same distinction is made in the Patent Office between chemical processes and others, as may be found in the Patent Office decisions in the cases of Ex parte Harter, Norton, and Norton, Jr., 57 USPQ 283, and Ex parte Teichner, 67 USPQ 333.

We do not deem it material that the Axelrad patent discloses a larger number of compounds than those of the involved application. It seeme to us that the compounds of the patent could be considered as equivalents to the substances set out in the involved application. As a matter of comparison, the identical compounds disclosed in the application of appellant are disclosed in the patent to Axelrad, and clearly appellant has an effective filing date of almost a year prior to the filing date of that patent.

By reason of what has hereinbefore been stated, the decision of the Board of Appeals is reversed.

Reversed.

By reason of illness, Hatfield, Judge, was not present at the argument of this case and did not participate in the decision.